Thank you, Your Honor. Good afternoon, everybody. May it please the Court. My name is Eitan Kasteljanich, and I'm representing Julie Loewen in this appeal. Loewen has been unable to work at substantial gainful activity levels since January 2008, due primarily to the functional effects of bipolar disorder. She filed for disability benefits in August 2011, and her first ALJ in March 2013. Both the District Court and this Court affirmed the first ALJ's decision. While Loewen's court appeals on her first claim were pending, she filed a second claim in February 2015, in which she alleged disability since March 2nd, 2013, which is the day after the previous ALJ's decision. That is the claim that is before this Court today. Loewen's second claim was denied by a different ALJ in November 2016. ALJ2 did not, however, actually conduct a proper adjudication of Loewen's claim. ALJ2 did not include in the record all of the relevant medical evidence from the previous claim, but most significantly, ALJ2 based her entire decision on a misapplication of the Chavez acquiescence ruling and the doctrines of res judicata and collateral estoppel. Just as a side note, Chavez talks all about res judicata, but it actually is dealing with collateral estoppel to a large extent, just doesn't call it that. That's why I've been talking about both of those terms. Because ALJ1's decision was not yet final and binding, was still under appeal on the date that ALJ2 issued her decision. The Chavez acquiescence ruling did not apply here, nor did the doctrines of res judicata and collateral estoppel apply here with regard to the unadjudicated time period beginning on March 2nd, 2013. Therefore, ALJ2's repeated reliance on the Chavez AR and the doctrine of res judicata throughout her decision, ALJ2 applied incorrect legal standards in her decision. Mr. Yonage, if I could ask you a question. Why wasn't, or if you could answer, why wasn't the ALJ's reliance on the Chavez presumption harmless error? Well, in the decision below, the district court correctly held that it was an error, but the district court incorrectly held that the error was harmless because the Ninth Circuit had ultimately affirmed the first ALJ's decision. The problem with viewing it, the problem is that the district court used an incorrect, harmless error legal analysis. And the reason the error is not harmless is because we don't know, sitting here, what that ALJ would have done if she had done it right. All that we know is that she, we know that she did it wrong. The district court found that she did it wrong. She should not have applied the Chavez AR. So if, go ahead. From what I can tell, the second ALJ, if it's Maller, did a pretty expansive review of the case, even though it really, because it was relying on the presumption, I'm not sure it was required to, but it did in any event. What information, how would it have come out differently? I know that you have the vocational expert issue that is out there, but other than that, if we weren't, if we weren't to reach the merits, I'm just trying to figure out why, why is what the ALJ did here, how did it affect the outcome? How, why was it consequential? Okay. It was certainly consequential in her decision because every, every finding in her that all she had to look at was, was there, well, under Chavez, she didn't even do the Chavez analysis correctly because she's supposed to look at whether or not there were changed circumstances. And she didn't do that. She kept asking, well, are you worse now than you were then? And the claimant, Ms. Lowen, freely admitted, no, I'm no worse now. But the point is she was disabled before and she's still disabled. Now the ALJ was asking the wrong questions under Chavez because the issue is not whether or not Lowen had gotten worse. The issue is what did the evidence show that she was worse than she had been found to be by the previous ALJ. But I'm saying all this, once again, I'm going down this, this rabbit hole because Chavez AR did not apply on the day that the ALJ made her decision. I understand that. I just was curious because I know that's what the, the district court also made a determination on that. But let me ask you, let's say you're able to get the Chavez, get past the Chavez presumption at this, at this level. Oh, would the ALJ reviewing your second application, let's say on remand, be required to apply the Chavez presumption now? Yes. But the difference is, well, one difference is ALJ Mauer has retired. It would be a different ALJ. But setting that aside, any ALJ reviewing this would have to look at the entirety of the evidence. That's, I think the problem is if you're looking at what's new between how things were then and how things are now, if you exclude from the record all the evidence that showed how things were then, how do you show, how do you make that kind of comparison judgment? But the other issue, which I alluded to a moment ago, is that the fact that Lohan freely admits that she wasn't worse, she was just as bad currently as she was at the time of the previous ALJ's decision. The previous ALJ, for substantial evidence, I mean, she found, would have had to find there was a preponderance of the evidence that justified, you know, rejecting Lohan's description of her, of her problems. But, and then the courts only looked at substantial evidence. Was there substantial evidence to support that? And the courts found that to be true. But at a new look at the previous evidence, the totality of the evidence, that's what didn't occur here. There was no, no ALJ has looked at the totality of the evidence, including the testimony to determine, to make a new determination. Now, I should mention, you and you pointed this out that we have to, because they would have to be using the Chavez AR on remand, the first step would be to overcome that. She has to show that there are changed circumstances. Changed circumstances is defined as new evidence. There's tons of new evidence here. That's what doesn't make any sense. Not only should she have not applied the Chavez AR, but she applied it and she applied it wrong, because substantial evidence does not support her finding that there was not changed circumstances here, that there was not sufficient new evidence to show changed circumstances. But Mr. Janich, this is Kajpea, isn't the admission by Lohan that she was no worse off after 2013 than she was before 2013, isn't that substantial evidence upon which the ALR could rely to find that she was not disabled? In light of all of the significant medical evidence, no, it's not. Because you've got to look at, you can't look at that one statement of her. Isn't it a test of whether we are compelled to find that the other evidence overcomes the admission by the petitioner, by the appellant? No, that's an incorrect legal standard from asylum cases. And if you found the purpose of the compelled language in the decisions that are cited with that compelled language, if you find that they're compelled, then it's like in Social Security where you have to award benefits. It's that heavy a level. That's not the correct legal standard for substantial evidence. You have to look at all of the evidence as a whole. And you can't just look at, if there's one piece of evidence in the file, it says something, but there's a thousand pieces of evidence that contradict it. That one piece isn't enough. That's not, that's, you've got to look at the whole thing. And it's not the compelled, compelled language is wrong. All right, thank you. If none of you have additional questions, I would like to reserve some time for rebuttal. I have no questions at this time. Please. You're saving time for rebuttal. I am, but I wasn't sure if Judge Gould had a question. No. Oh, I'm sorry. I heard you, Robert. I said, that's fine with me, that I have no questions. If it's okay with Judge McGeehan, Judge Beyer? No questions. Hold. Keep your powder dry for rebuttal. Now, for the government, we have Mr. Nelson. Yes, Your Honor. Lars Nelson on behalf of the Commissioner of Social Security. May it please the court. This court should affirm the decision of the ALJ because it is supported by substantial evidence and free from prejudicial legal error. Turning to some of the issues that were discussed during my opposing counsel's presentation, the question is whether the error was consequential to the ultimate non-disability determination. And if we were to remand on the issue of Chavez, then the ALJ would be compelled to apply Chavez again. So we know how this case would turn out. This is a closed period of disability, meaning the question is, only is she disabled between March 2nd, 2013 and March 31st, 2014. So there is no further development of this record that would be happening on remand. So the question, much of the assignment of error stems from the argument that because the ALJ consistently found no change of circumstances and noted this point throughout the decision, that we don't know what the ALJ would do if this case went back or what the ALJ would ultimately do. But as the First Circuit decided in Boateng, in fact, we do because we would be remanding for the meaningless gesture of the ALJ to not apply this court's now final decision. As far as Ms. Lowen's report or testimony at the hearing at page 53 of the transcript, that nothing has changed. Judge Bea is correct that that does constitute substantial evidence. It is more than a scintilla. And the Supreme Court recently in BSTC reaffirmed that that is a very low standard. And contrary to the presentation, it is in fact consistent with other evidence in the record. When she went to see her primary psychologist, Dr. Anton, he consistently reported that there was no change in circumstances. He consistently found that she had fair to good memory. And after her divorce, she was ultimately volunteering again and attending her group sessions, doing yoga. And these are the same facts that were relied upon in the prior ALJ decision and that were previously affirmed by this court in Lowen 1. As far as her nurse practitioner, Ms. Hokanson, Ms. Hokanson also found on her exams no evidence of agitation, depression, or anxiety. So Ms. Lowen's testimony is in fact consistent with other evidence in the record. Further developing the record by including the evidence from the prior ALJ decision is inconsistent with the common understanding of race judicata and that jurisprudence. To do so would compel an ALJ to in fact rehash facts that were already decided in a prior case. And in this case were already affirmed by this court. The rule of the law of the case and the rule of mandate would compel the ALJ's interpretation of that in the record. If I could ask a question here, Mr. Nelson. So in your view, based on your presentation, when the Chavez presumption applies, what does the ALJ focus on? Or what should be the focus of the ALJ's decision? The focus of the ALJ's decision is a comparison of a change in circumstances from the facts as decided by the previous ALJ decision. And in this case, the facts affirmed by this court. And so in this changed circumstances, Mr. Donitz said that the ALJ in this case focused on whether or not her condition worsened. And that was incorrect. He was incorrect to do so. Instead, he needed to look at changed circumstances in general. What's your response to that? And what's the authority? It's conflating two different issues. There are change in circumstances such as changes in the law, changes in her age, which would affect the application of the commissioner's decision. But as far as worsening, that is a direct quotation from Chavez, is that she must show a worsening of her condition to show a change in circumstances as to the evidence itself. And so your harmless error argument here is that it was harmless because now the Ninth Circuit is ruling. And so the ALJ's focus and review is basically fine in light of that. That is certainly one aspect of it. Under this court's decision in Tripathi, the ALJ's decision was final for race judicata purposes after the district court rendered its decision in this matter. In Lowen 1, I should say. So when the district court rendered its decision in Lowen 1 in January of, I believe, 2016, for race judicata purposes, there was a final decision. And then when the ALJ, in this case, rendered her decision in November 2016, it was correct for her to apply the presumption. That's one aspect. And the other aspect of the harmless error analysis is that if there, in fact, as she testified at the hearing, that there's been no change in circumstances, then the error is also harmless as a matter of common sense because it would be inconsistent for the ALJ to reach differing conclusions here when, as the claimant says, nothing has changed from the prior decision. Let me ask you, Ikan, because it looks like the ALJ's decision to rely on the vocational expert testimony that was not on the record may create an issue here that I'm not quite sure what the answer is. And I'm trying to figure out if that error, which I think you can see that's error, but I want to clarify that, whether that was harmful. It seems like you think it might be error, but it wasn't prejudicial. But it looks like the ALJ, like we, are bound by the administrative record here. And without the vocational expert testimony in the record, it's difficult, isn't it, for us to assess whether that decision was, in fact, prejudicial? Well, so to answer your first question is, does the commissioner concede error on that point? The argument is framed as one of harmless error because the ALJ did not apply the program operation manual system in this matter. And obviously, as our agency wants the ALJs to do so, but as this court said that they are, the POMs are not enforceable law. So to the extent it's error, I don't know if that is probably not legal error, but that is the error that we framed it as and have conceded. As far as the record on step, at step five goes and the vocational testimony, the acquiescence ruling and the Chavez both say that we are obliged to follow the prior decisions in the subsequent proceedings if the presumption is not rebutted. So the inclusion of the hearing transcript from that case would only serve as a collateral attack on the decision already rendered by this and affirmed by this court in law in one. There would be nothing to gain except just having its presence and knowing that at some point that there was a vocational expert who did identify jobs that were matched this residual functional capacity assessment for this claimant. But that is superfluous in light of the fact that our comparison point is the administrative law judge's decision in the first case. We don't ask district court judges to perform a whole round of discovery prior to applying the doctrine of race judicata or collateral estoppel. And that is what effect is being asked here is that we redo discovery for the prior case in order to simply confirm what the order said. And so in light of that, I would say that the error is harmless. And it's also harmless again because if the ALJ made all the correct decisions leading up to that point, then we would just be remanding for the, you know, meaningless exercise of having a different vocational expert identify the same jobs and presumption law for your response. I guess my question, you know, or let me ask it a different question. If the application of the Chavez presumption, we find that it was harmful, could we rely on the ALJ's decision regarding the vocational expert? Well, there would be two aspects to that. First, it would be the application of Chavez's harmful. And then you would also decide, you know, contrary to the Xia Yang and Plummer decisions, unpublished decisions of this court, that the ALJ's decision, the ALJ didn't separately appropriately consider the evidence from the record. So if you made those two findings, that one, the ALJ erred in applying Chavez, and two, that the error was harmful because there was a change in circumstances or she did rebut the presumption, then yes, we would have to remand for a new proceeding because there would presumably be a different residual functional capacity assessment, which would affect different jobs. But if the sole issue is the ALJ erred in applying the presumption, erred in applying Chavez, but the ALJ didn't err because the ALJ fully considered the evidence for the relevant period here, then we're in a situation where we have two identical decisions where we would be remanding just for the purposes of an ALJ to ask a vocational expert to repeat what was already decided. And I think that that would be, that does put us in harmless error territory for the Step 5 decision. Thank you. Well, then, unless the court has any other questions, I would ask that the court affirm because Ms. Lohmann has said that nothing has changed from the prior decision, and this court previously affirmed that that prior decision was correct. Thank you. Thank you, counsel. Okay, Mr. Janich to speak on rebuttal. Thank you. First, I'd like to address what opposing counsel said about the prior file, and we don't want to get this prior file messing into the current file. There is evidence from the prior file in the current file. So why is there some evidence from the prior file in the current file, but all this other evidence, which is very significant, which showed decompensations and severe, you know, police being called, all sorts of problems, that evidence was not included. Why is that? Why is the testimony from the prior hearing not included? It just doesn't make any sense. There's no reason that that evidence couldn't be here. Shouldn't have been included. And the ALJ might not have given it anyway, or maybe limited weight, or maybe great weight, but it's not there. We can't base a decision on missing evidence. Anyway, it's two-sided to say that, no, the prior evidence can't come in, but hey, well, some of it's there. I just won't mention that. So regarding changed circumstances, I do want to focus on that again. The significant point is that, yes, she said, I'm the same as I was before, okay? Read her carefully, read her testimony. Did the ALJ ask her, read her, listen, here is the residual functional capacity from the previous decision. ALJ, Rosa, found that you have the following abilities. Is that correct? Do you agree with that? No, I don't agree with that. I didn't have those abilities then, and I don't have them now. Those questions weren't asked. And that's the actual real question here. Not, does she feel any better now or worse now than she, does she feel worse now than she did at the time of the previous ALJ's decision, but is she worse than the ALJ found her to be? That question wasn't asked. That's the question we have here. That's why it's not a foregone conclusion that a proper adjudication here would result in a different decision. And that's the other thing is that we all know, we're all agreeing that the ALJ erred. The ALJ did not comply with Chavez. Chavez did not apply, and yet she applied it in all of her analysis. Because she applied it in all of her analysis, why should we accept any of her analysis? And we don't know for sure what she would do, even if it was the same ALJ. If we sent this back to her, what would she do if she considered all the evidence? What would she do if she actually considered, if the follow-up question was asked, are you different now than you were then, or are you different now than the ALJ found you to be, and made that distinction? Lohan is not a lawyer. Lohan did not understand that significance, that difference. And she was just telling the truth under oath. She's the same as she was before. She still can't work. Why does nobody believe her? Now, with regard to the new evidence that does make a difference, and why I think it would make a difference if it was remanded to, and obviously it would be a new judge at this point, a new ALJ, is read all of the medical evidence from Dr. Knowles, who was her treating physician, and who worked in the clinic that she'd been treated by, by for many years, read all of those, the opinions of the people who were treating her. And those opinions do not describe somebody who is able to work. There's no need to redo discovery here. All the evidence is in the possession of the Social Security Administration. They just refused to move it from one file electronically into another. They got it all. So that's what we're asking. We're asking for her. The thing is, Julie Lohan did not receive a de novo hearing here. She did not receive a new decision. And the ALJ who considered her case applied admittedly incorrect analysis, legal standards throughout the decision. All she's asking for is a fair hearing before an impartial judge. Thank you. Okay, thank you, Mr. Janic. I want to congratulate both counsel for their excellent arguments under the special circumstances of remote argument. We really appreciate your expertise. So unless Judge Beyer or Judge McGeer have a question, this matter shall be submitted. No, thank you. I have no more questions. I have no more questions. Thank you very much. Thank you. Thank you. The matter will be submitted.
judges: Gould, Bea, Murguia